UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MIGUEL MARTIN,

               Petitioner,

v.                               Case No:  2:11-cv-639-FtM-38CM

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

               Respondents.

_____/

## OPINION AND ORDER[1]

     This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Miguel Martin ("Petitioner"), who is presently confined at the DeSoto Correctional Institution in Arcadia, Florida (Doc. 1).  Petitioner, proceeding *pro* se, attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court for Collier County, Florida in case number 04-3703-CFA for trafficking in cocaine and methylenedioxymethamphetamine ("MDMA") and possession of cannabis. *Id.* Respondents filed a response to the petition, and Petitioner filed a reply to the response (Doc. 13; Doc. 17).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Petitioner raises twelve claims in his petition.   Specifically, he asserts that: (1) the trial court erred by denying his motion to suppress; (2) the trial court erred by allowing a witness to invoke his Fifth Amendment right against self-incrimination; (3) the trial court made a prejudicial statement during the jury selection process; (4) trial counsel failed to properly argue his motion for a judgment of acquittal; (5) trial counsel was ineffective for advising Petitioner to testify on his own behalf; (6) trial counsel was ineffective for allowing Petitioner to inform the jury that he was currently in jail; (7) trial counsel was ineffective for failing to object to the "fundamental error" that occurred during the jury charge; (8) trial counsel failed to file a demand for a speedy trial; (9) trial counsel had a conflict of interest while representing Petitioner; (10) the trial court committed fundamental error and a due process violation for not establishing a prima facie case and the elements of the alleged crime and by convicting Petitioner under an unconstitutional statute; (11) a manifest injustice occurred under the equal protection of the law when Petitioner was singled out for prosecution; and (12) a manifest injustice occurred when Petitioner received a disproportionate sentence to the person arrested with him (Doc. 1 at 3-19).

Upon due consideration of the petition, the response, the reply, and the state court record, the Court concludes that the petition must be denied.   Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rule 8, *Rules Governing Habeas Corpus Petitions under Section 2254.*

**I.**     **Background and Procedural History**

On or about April 20, 2006, Petitioner was convicted after a jury trial of trafficking in 28 grams or more of cocaine, trafficking in more than 10 grams of MDMA, and

possession of more than 20 grams of cannabis (Ex. 4 at 141-43).[2]   Petitioner was sentenced to 25 years in prison on each of the trafficking counts and to five years in prison on the possession count, with all sentences to run concurrently (Ex. 5 at 146-48). Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 9); *Martin v. State*, 951 So. 2d 842 (Fla. 2d DCA 2007).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised ten claims of ineffective assistance of counsel (Ex. 11).   The post-conviction court denied the petition, and the Second District Court of Appeal *per curiam* affirmed (Ex. 16); *Martin v. State*, 29 So.3d 1127 (Fla. 2d DCA 2010).

On or about September 4, 2007, Petitioner filed a petition for a belated appeal alleging ineffective assistance of appellate counsel (Ex. 19).   The circuit court treated the petition as a petition alleging ineffective assistance of appellate counsel, and denied the petition (Ex. 20).

On December 18, 2009, Petitioner filed a second Rule 3.850 motion in which he asserted that his trial counsel had been operating under a conflict of interest (Ex. 23). The motion was dismissed by the post-conviction court because it was untimely filed (Ex. 24).   Petitioner appealed, and the Second District Court of Appeal *per curiam* affirmed (Ex. 26); *Martin v. State*, 36 So.3d 98 (Fla. 2d DCA 2010).

On December 20, 2010, Petitioner filed a petition alleging ineffective assistance of appellate counsel (Ex. 28).   The petition was denied as an improper filing because

---

[2] References to exhibits are to those filed by Respondents on May 22, 2012 (Doc. 15).   References to the trial transcript, contained in exhibit 35 will be cited as (T. at __).

Petitioner was attempting to use the writ of habeas corpus to obtain the kind of collateral post-conviction relief which may have been available by filing a motion in the sentencing court (Ex. 29). Petitioner appealed, and the Second District Court of Appeal *per curiam* affirmed with numerous citations to state court decisions (Ex. 34); *Martin v. State*, 69 So.3d 285 (Fla. 2d DCA 2011).

Petitioner filed the instant habeas petition on November 3, 2011 (Doc. 1).

## II. <u>Governing Legal Principles</u>

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 134 S.Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that

contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.   Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).   When

reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### B.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d

1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)   there is an absence of available State corrective process; or
> > >
> > > (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To establish cause for procedural default, a petitioner must demonstrate that some objective factor

external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

**III.**   **Analysis**

      **A.**   **Claim One**

Petitioner asserts that the trial court violated his Fourth, Sixth, and Fourteenth Amendment rights when it denied his motion to suppress (Doc. 1 at 3).   Specifically, Petitioner argues that there was no probable cause to stop the U-Haul truck he was driving from Miami to Fort Myers on December 8, 2004, and because the stop led to the evidence that prompted his arrest, the evidence should have been suppressed. *Id.*

Prior to trial, Petitioner filed a motion to suppress based upon the allegedly illegal nature of the stop (Ex. 2).   A hearing was held on the motion (Ex. 3).   Ionis Garcia of the Florida Highway Patrol testified that as he was parked near a toll plaza on Interstate 75, he noticed a "U-Haul truck coming out of the median, fishtailing all over the place, and pretty much looked like it was going to roll over; and then as he passed right by us he mainly just pulled over." *Id.* at 7.   Garcia heard the brakes squealing and noticed smoke coming from the tires. *Id.* at 8.   The U-Haul pulled over, and Officer Garcia activated his lights and pulled up behind the vehicle. *Id.* at 19-20.

State Trooper John Wilcox testified that while he was parked in the median, having a conversation with Officer Garcia, he heard a squealing noise behind him.   He testified that "I turned around, I saw a U-Haul truck off the roadway.   The left two tires were in the median.   The vehicle swerved to the right to regain control.   The vehicle ended up on its two left tires and almost overturned." (Ex. 3 at 18).   The U-Haul pulled over on its own volition, and Officer Wilcox testified that he pulled up behind it. *Id.* at 19.   He stated that the driver exited the U-Haul and told him that he thought he "blew a tire." *Id.*   Officer Wilcox testified that he approached the vehicle to ask the passenger if he was okay, and noticed a "fairly strong odor of marijuana." *Id.* at 21.   He asked Petitioner if there was anything illegal in the vehicle, and Petitioner told him that there was not, but "[Petitioner] would not make eye to eye contact with me, his hands were trembling, he had rapid breathing, he looked down at the ground and said, 'no, I don't have anything in the vehicle.'" *Id.* at 23.   Officer Wilcox asked for permission to search the truck, and Petitioner told him to "go ahead." *Id.* at 24.

After hearing argument from both sides, the trial court denied the motion to suppress:

> All right.   The way the Court looks at it is: Number one, there was erratic driving.   Number two, there was erratic driving to such an extent that somebody could have been injured in the vehicle.
>
> Number three, the officer made a stop which the Court's of the opinion it was a legal stop.
>
> Number four, the defendant appeared to be nervous.
>
> Number five was odor of raw marijuana.
>
> Number six, it was a consent search.
>
> Number seven, valid search and seizure by the police.   So I'll deny the motion.

(Ex. 3 at 47-48).   On direct appeal, Petitioner argued unsuccessfully that the denial was erroneous because, if the initial stop was illegal, "the consent to search given by [Petitioner] was rendered involuntary and the evidence seized is the product of an illegal search (Ex. 7 at 1) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963); *Brown v. Illinois*, 422 U.S. 590 (1975)).   The state filed a brief in response and argued that Petitioner's erratic driving justified the stop and that although Petitioner consented to the search of the U-Haul, consent was not needed because of the odor of marijuana emanating from the vehicle (Ex. 8 at 8-13) (citing *Carroll v. United States*, 267 U.S. 132 (1925); *United States v. Ross*, 456 U.S. 798 (1982)).   Florida's Second District Court of Appeal denied the claim without a written opinion (Ex. 9); *Martin*, 951 So. At 842.   A review of the record supports the state courts' conclusions on this issue.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend IV.   "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision. . . . An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances.   As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810-11(1996) (internal citations and quotations omitted); *Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004).   A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).

Under Florida Statute § 316.1925, the operator of a vehicle is required to drive in a "careful and prudent manner, having regard for the width, grade, curves, corners, traffic, and all other attendant circumstances, so as not to endanger the life, limb, or property of any person." *Id.*   The officers' testimony that Petitioner was swerving and "almost overturned" was competent, substantial evidence that Petitioner violated the Florida statute against careless driving.[3]   Moreover, under Florida law, a stop is permitted, even without a traffic violation, as long as the stop is supported by a reasonable suspicion of impairment, unfitness, or vehicle defects. *See State v. Davidson*, 744 So. 2d 1180, 1181 (Fla. 2d DCA 1999) ("Because of the dangers inherent to our modern vehicular mode of

---

[3] At trial, Petitioner testified that he attempted to downshift the truck and when he did, the brakes locked, and the truck almost overturned (T. at 339).   He stated that he then parked the truck and got out to ensure that the tires were all right. *Id.*

life, there may be justification for the stopping of a vehicle by a patrolman to determine the reason for its unusual operation.").

The Court concludes that because Petitioner operated his vehicle so that it went into the median and almost overturned, a reasonable officer in either Officer Garcia's or Officer Wilcox's position could have stopped Petitioner's vehicle for careless driving or because of a suspicion of operator impairment.   Therefore, the stop was constitutionally permissible. See *United States v. Johnson*, 136 F. App'x 279, 281-82 (11th Cir. 2005) (fact that driver was swerving was sufficient justification to stop vehicle to insure that driver was neither drunk or sleeping); *United States v. Harris*, 928 F.2d 1113, 1116–17 (11th Cir. 1991) (a law enforcement officer who saw a driver swerve into the emergency lane twice "was justified in stopping and detaining [the defendant] to determine whether he was drunk or falling asleep at the wheel").

After the stop, the search of the U-Haul was justified because Petitioner consented to the search and because Officer Wilcox smelled marijuana coming from the truck. Generally, the Fourth Amendment requires that an officer obtain a warrant before conducting a search. U.S. Const. amend. IV.   A warrant is not needed, however, if the defendant voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) ("it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.").   The voluntariness of consent is a question of fact dependent upon the "totality of the circumstances." *Schneckloth*, 412 U.S. at 227.   A determination of a factual issue made by a state court is presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).   There were no

objections to Officer Wilcox' testimony that Petitioner consented to the search nor did counsel for Petitioner cross examine the officer on this issue.[4]   The Second District Court of Appeal did not clearly err in concluding that Petitioner consented to the search of his U-Haul truck.   Petitioner has not carried his burden to rebut the presumption of the state court's factual finding by clear and convincing evidence. 28 U.S.C. § 2254(e).

Alternatively, even if the Court were to conclude that Petitioner did not consent to the search, the officers did not require his consent to search his vehicle.   In the context of automobile searches, it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982).   "At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed, namely ... the possession of contraband, arose." Id; see also United States v. Rojas, 538 F.2d 670 (5th Cir. 1976) (odor of marijuana emanating from vehicle stopped at Border Patrol checkpoint sufficient to establish probable cause to search the vehicle); United States v. Griffith, 109 F.3d 706, 708 (11th Cir. 1997) (odor of marijuana detected during traffic stop furnished reasonable suspicion justifying further investigation of suspect).   Officer Wilcox testified that as he approached the passenger side of the U-Haul truck, he "got an odor of marijuana emitting from the vehicle, a raw odor of marijuana." (Ex. 3 at 21).   Officer Wilcox testified that he had been trained in the identification of the "distinctive" odor of raw marijuana and handled it weekly for training purposes. Id. at 22.   He testified that he had made between five hundred and a thousand cannabis related arrests during his career. Id.   The trial court

---

[4] Neither does Petitioner appear to assert in the instant petition or on direct appeal that he did not in fact consent to the search.   At trial, Petitioner testified that he consented to the search because he did not think he had anything to hide (T. at 340-41).

denied Petitioner's motion to suppress based partly upon Wilcox' detection of the odor of marijuana.

Petitioner has not shown how the state court's adjudication of this claim was contrary to clearly established federal law or was based upon an unreasonable determination of the facts.   Claim One is denied pursuant to 28 U.S.C. § 2254(d).

**B.    Claim Two**

Petitioner asserts that his Fourth, Sixth, and Fourteenth Amendment rights were violated when the trial court restricted defense counsel's examination of Michael Medina ("Medina") based on Medina's invocation of his Fifth Amendment right against self-incrimination (Doc. 1 at 4).   Petitioner raised this issue in the trial court (T. at 262). Petitioner's arguments to the trial court were rejected, and Petitioner subsequently raised this claim unsuccessfully on direct appeal (Ex. 16, 17).

At trial, Petitioner sought to call as a witness Medina, who had been the passenger in Petitioner's U-Haul at the time of his arrest (Ex. 35 at 262).   Out of the presence of the jury, defense counsel was allowed to voir dire Medina to determine the scope of proposed examination (T. at 280- 84).   Medina admitted that he was traveling in the U-Haul with Petitioner when it was stopped, but when asked if he owned the bag in which the drugs were found; whether he owned the belongings found in the back of the U-Haul; or whether he rented the U-Haul, he invoked his right against self-incrimination. *Id.* at 281.   Defense counsel stated he intended to ask Medina "the questions that he's going to plead the Fifth to on the record, as part of my questioning of him." *Id.* at 286.   Otherwise, argued defense counsel, he would be forced to call Petitioner as a witness to establish certain things which "really prejudices us in our defense[.]" *Id.* at 287.   The state argued, and the trial

court agreed, that a defendant had no right to call a witness who will assert a valid privilege against self-incrimination in the presence of the jury. *Id.* at 264.   The state also noted that if Medina did testify that the drugs belonged to him, the state would look into filing trafficking charges against him. *Id.* at 289.

After hearing extensive argument from both sides, the Court concluded that Medina could testify generally about his relationship with Petitioner but that defense counsel would be precluded from asking Medina any questions that would cause him to invoke his Fifth Amendment rights in front of the jury (T. at 331).   Defense counsel objected, noting:

> Well, Your Honor, if I'm understanding what the Court's ruling here I'm not going to call him.   I'm just going to object to it, but I'm not going to call him to ask him questions when the jury would have to reason to know why I wouldn't ask him anything further than name, where he lived, or how he knew my client.
>
> I'm just forced not to call him and put my client on the stand to get the information out, then.

*Id.* at 333-34.   The trial court's ruling was affirmed on direct appeal (Ex. 9); *Martin*, 951 So. 2d at 842.   A review of the record supports the state courts' conclusions.

The Compulsory Process Clause of the Sixth Amendment grants a criminal defendant the right to call witnesses that are "material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).   The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. 5.[5]   The Sixth Amendment right to

---

[5] Although a witness other than a criminal defendant cannot properly invoke the Fifth Amendment privilege against self-incrimination to avoid appearing at trial altogether, he or she can invoke the privilege to avoid answering incriminating questions. *Allen v.*

compulsory process is not absolute; and testimony is subject to general evidentiary rules such as those governing relevance, privilege, and the Fifth Amendment privilege against compulsory self-incrimination. *See Washington v. Texas*, 388 U.S. 14, 23 n. 21 (1967); *Kastigar v. United States* , 406 U.S. 441, 444-45 (1972) ("[T]he power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination."). Thus, the Sixth Amendment's right of compulsory process must generally give way to a witness' Fifth Amendment privilege against self-incrimination. *See Brown v. Cain*, 104 F.3d 744, 749 (5th Cir. 1997).

Defense counsel told the trial court that he wanted Medina to invoke his Fifth Amendment right against self-incrimination in front of the jury, presumably so that the jury could infer that Medina was either complicit with Petitioner, or solely responsible for the drugs in the U-Haul. Petitioner has cited no United States Supreme Court decision holding that a state court errs by denying such a request. In *Namet v. United States*, the United States Supreme Court noted that "when a witness is asked whether he participated in criminal activity with the defendant, a refusal to answer based on the privilege against self-incrimination tends to imply to the jury that a truthful answer would be in the affirmative." 373 U.S. 179, 185-86 (1963). Petitioner had no constitutional right to benefit from any inferences the jury may have drawn from Medina's assertion of the privilege either "alone or in conjunction with questions that have been put to him." *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974); *see also Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970) ("It is well settled that the jury is not entitled to draw any

---

*Illinois*, 478 U.S. 364, 368 (1986).

inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.").[6]

Petitioner does not explain how the state courts' adjudications of this claim were contrary to clearly established federal law or were based on an unreasonable determination of the facts.   To the contrary, the relevant case law supports a conclusion that there is no Sixth Amendment right to compel a witness to go through the exercise of taking the stand when it is known in advance that the witness will assert his Fifth Amendment right against self-incrimination.   In other words, there is no Sixth Amendment right to force another to "take the Fifth." United States v. Gray, 626 F.2d 494 (11th Cir. 1980) (citing United States v. Bolts, 558 F.2d 316, 324 (5th Cir. 1977) ("Bolts has no constitutional right to compel [a witness] to take the stand and testify when it was known in advance that she intended to assert the fifth amendment privilege.").   Based on the foregoing, this Court concludes that the trial court did not err when it limited Petitioner's examination of Medina to topics that would not invite him to invoke his Fifth Amendment right against self-incrimination.

Petitioner has not demonstrated entitlement to habeas relief on this issue.   Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

---

[6] In *Bowles*, counsel for the defendant argued that the fact that a witness had invoked his privilege should be brought to the attention of the jury. The court disagreed, observing that "the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination." 439 F.2d at 542.   The court further explained that "an obvious corollary to these precepts is the rule that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury [as t]his would only invite the jury to make an improper inference." *Id.* (citation omitted).

**C.      Claim Three**

Petitioner asserts that counsel was ineffective for failing to object and move for a mistrial or curative instructions when the trial court made a prejudicial comment to the prospective jury panel during jury selection (Doc. 1 at 5).   Specifically, Petitioner asserts that the trial court erred when it stated:

> We're not dealing with actuary tables or life expectancy or the value of property or things like that.  The evidence should make a lot of sense to you, it shouldn't be something that you can't understand.

*Id.*  Petitioner argues that the statement excused the jurors from using common sense and encouraged them to believe all the evidence presented during trial. *Id.*

Petitioner raised this issue in his Rule 3.850 motion where it was rejected by the post-conviction court on the ground that counsel had no legal basis to object to this statement because the statement was "not inaccurate, misleading, or prejudicial." (Ex. 12 at 5).   The post-conviction court further noted that Petitioner could not show how an objection would have affected the outcome of his trial, and therefore, the claim was rejected for failure to satisfy either prong of the *Strickland* test. *Id.*   Petitioner appealed, and the post-conviction court's adjudication was affirmed (Ex. 16); *Martin*, 29 So.3d at 1127.

Respondents argue that "Petitioner's arguments as to the effect of [the trial court's] statements run counter to the statements on their face as well as logic.   The statements, in their totality, do not create an impression that the State's evidence was to be believed and not tested." (Doc. 13 at 30).   After reviewing the record, this Court agrees with Respondents that Petitioner has not demonstrated entitlement to habeas relief.

When addressing the jury pool, the trial court explained:

> If you're selected to sit on the jury, it's my understanding that once you complete your deliberations, then that's it.   Those of you who are not selected will be sent back to the jury room to see if some other judge needs you in another courtroom.
>
> It should be fairly a straightforward day today.   Criminal cases have a tendency to be pretty straightforward.   We're not dealing with actuary tables or life expectancy or the value of property or things like that.   The evidence should make a lot of sense to you; it shouldn't be something that you can't understand.
>
> Don't mean to minimize it, because of course it's very important.   The case is important to both the State and to the defendant.

(T. at 19).

It is well settled under Florida law that a trial court has wide discretion in instructing a jury. *James v. State*, 695 So.2d 1229, 1236 (Fla. 1997).   As the Florida Supreme Court stated in *Canakaris v. Canakaris*, "[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." 382 So.2d 1197, 1203 (Fla. 1980).   In the instant case, the trial court correctly noted that the evidence in criminal cases was generally straightforward.   The court did not, as is suggested by Petitioner, state that the state's evidence was to be believed or that the jurors should not use their common sense when evaluating it.   Rather, the court merely reassured the prospective jurors that the case was unlikely to be one that they would have difficulty understanding and admonished them of the importance of the trial.   This was not unreasonable and was not an abuse of discretion.   Any objection to this statement by counsel would have been frivolous and not well received by the trial court or the jury.   Trial counsel's performance was not deficient for failing to make a frivolous argument.   *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (counsel's failure to raise a meritless issue "cannot prejudice a client.").

Moreover, during his charge to the jury after the evidence was presented, the trial court instructed the jurors that it was up to them to decide what evidence was reliable and that they should use their "common sense in deciding which is the best evidence and which evidence should not be relied upon in considering" their verdict (T. at 430).   The trial court further instructed that the jurors might find "some of the evidence not reliable or less reliable than other evidence." *Id.*   Finally, the jurors were instructed that they could "believe or disbelieve all or any part of the evidence or the testimony of any witness." *Id.* at 431.   Accordingly, any insinuation by the trial court that the jurors were excused from using their common sense or that they should believe all of the evidence was cured by the court's subsequent charge to the jury. *See Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983) (a jury is presumed to follow jury instructions).

This claim fails on both prongs of the *Strickland* test. Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

### D.   Claim Four

Petitioner asserts that trial counsel was ineffective for failing to present argument on the motion for a judgment of acquittal filed at the close of the state's case (Doc. 1 at 7).   Specifically, Petitioner argues that "[t]rial counsel should have argued to the court to support said J.O.A. motion that, the only evidence linking or inferring guilt upon petitioner was that of the alleged confession obtained by police officials from petitioner and nothing more." *Id.* at 7-8.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim:

> [T]he Defendant claims that his counsel was ineffective for failing to offer argument on his first motion for judgment of

acquittal.   However, this claim is conclusively refuted by the record, as defense counsel offered argument at the time that he renewed his motion for judgment of acquittal, which the Court subsequently denied.   In addition, the grounds upon which the Defendant claims counsel should have argued for judgment of acquittal are wholly without merit.   The Defendant claims that the only evidence linking him to the drugs was his alleged confession.   However, the trial transcript indicates that the Defendant, himself, testified that he confessed to the troopers that the drugs belonged to him. That evidence by itself is sufficient to overcome a motion for judgment of acquittal.   *See Lynch v. State*, 293 So. 2d 44 (Fla. 1974) ("Courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law").   Therefore, the Defendant fails to demonstrate that but for counsel's failure to argue the first motion, it would have been granted. See Stephens v. State, 975 So. 2d 405 (Fla. 2007).   Accordingly, this claim is denied.

(Ex. 12 at 6) (citations to record omitted).   Petitioner appealed, and the post-conviction court's adjudication was *per curiam* affirmed (Ex. 16); Martin, 29 So.3d at 1127.   Upon review of the record, this Court agrees with the state courts' conclusions.

Under Florida law, a motion for a judgment of acquittal is designed to test the sufficiency of the evidence against a defendant. *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993).   A trial court may not grant a motion for a judgment of acquittal "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Miller v. State*, 782 So. 2d 426 (Fla. 2d DCA 2001) (quoting *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)).   The party moving for a judgment of acquittal admits the facts adduced in evidence and every conclusion favorable to the state which is fairly and reasonably inferable therefrom. *Spinkellink v. State*, 313 So. 2d 666, 670 (Fla. 1975).

In the instant case, the state presented evidence that the police stopped Petitioner's U-Haul due to erratic driving and concern that it could be disabled (T. at 149-

50, 194-97).   When approaching the vehicle, one officer smelled the odor of raw marijuana and subsequently received consent from Petitioner to search the vehicle (T. at 153, 198-200).   Police found a bag containing substances that were identified by the state's expert as marijuana, cocaine, and MDMA (T. at 247-257).   Petitioner and his passenger (Merida) were arrested, and Petitioner admitted to ownership of the drugs (T. at 158, 175-76).

Under Florida law, a person who "knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine . . . commits a felony of the first degree, which felony shall be known as "trafficking in cocaine[.]" Fla. Stat. § 893.135(1)(b)(1) (2006).   To be found guilty of trafficking in MDMA, the state would have to prove that a person "knowingly sells, purchases, manufactures, delivers, or brings into this state" ten or more grams of MDMA. Fla. Stat. § 893.135(1)(k) (2006).   A conviction for marijuana possession requires proof that the defendant had "actual or constructive possession of [marijuana]" Fla. Stat. § 893.13(6)(a) (2006).   Evidence was presented that the cocaine seized from the U-Haul weighed 49.8 grams, the MDMA weighed 39.1 grams, and the cannabis weighed 211 grams (T. at 249, 255-56, 259).

Where the state has produced competent evidence to support every element of a crime, a judgment of acquittal is not proper. *Gay v. State*, 607 So. 2d 454, 457 (Fla. 1st DCA 1992).   The state's evidence presented a prima facie case of the crimes of which Petitioner was charged.    Petitioner has presented no authority for his proposition that his confession to the police regarding his ownership of the drugs, even standing alone, could not defeat a motion for judgment of acquittal.   Counsel was not deficient for failing

to argue this issue in his motion for judgment of acquittal because such an argument would have been rejected by the trial court as foreclosed by Florida law.

This claim fails on both prongs of *Strickland*, and is denied pursuant to 28 U.S.C. § 2254(d).

### E.    Claim Five

Petitioner asserts that counsel was ineffective for advising him to take the stand in his own defense and admit that he told the police that the drugs found in the U-Haul belonged to him and not to Medina (Doc. 1 at 9).[7]  Specifically, Petitioner asserts that after the state's case, counsel called Petitioner to testify and "[t]rial counsel at such time advised petitioner to testify to the fact he gave such statement to police officials but to state it was to help his friends and passenger of the U-Haul truck." *Id.*  Petitioner asserts that counsel advised him that if he denied making the statements to the police, the jury would consider him to be a liar since the police had testified that Petitioner had made such statements. *Id.*

Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court noted that defense counsel had no ability to ensure that Medina testify on Petitioner's behalf regarding the ownership of the drugs (Ex. 12 at 7).   Petitioner appealed, and the post-conviction court's adjudication was *per curiam* affirmed (Ex. 16); *Martin*, 29 So.3d at 1127.   Respondents argue that the state courts correctly concluded that counsel was not ineffective because "Petitioner's intended strategy called for him to shift the blame to

---

[7] Petitioner also asserts that counsel was ineffective for failing to ensure that Medina testified at trial (Doc. 1 at 9).  As was explained in Claim Two, counsel was precluded by the trial court from having Medina testify regarding the ownership of the drugs found in the U-Haul, and counsel's performance could not be ineffective in this respect. *See* discussion *supra* Claim Two.

Medina," and since Medina could not testify as to his ownership of the drugs without implicating himself, to accomplish his goal of blaming Medina for the presence of the drugs in his U-Haul, Petitioner had to testify on his own behalf (Doc. 13 at 34).   Upon review of the record, this Court agrees with Respondents that the state courts correctly adjudicated this claim.

At trial, the state presented testimony from three police officers that Petitioner was cooperative with the police and that he admitted that the drugs found in the U-Haul belonged to him (T. at 158, 164, 175, 213, 233-34).   Testimony was also heard that Petitioner told police that he purchased the drugs in Miami and was transporting them to Fort Myers. *Id.* at 213-14, 233-34.   Petitioner was able to identify the approximate quantity of drugs found in the van and told the police how much he had paid for the drugs. *Id.* at 214-16, 223-25.

The only evidence offered by Petitioner during his defense was his own testimony. Petitioner testified that when he was approached by the police after nearly overturning the truck, he was nervous that he would receive a traffic ticket (T. at 340-41).   He told the police that it was okay to look inside the truck because he did not think he had anything to hide. *Id.* at 341.   He stated that the bag the police found belonged to Medina and that he had no idea what it contained. *Id.*   Petitioner testified that after he and Medina were taken to jail, Officer Garcia told him that if one of them took the blame for the drugs, the other could go free. *Id.* at 344.   Medina told Petitioner that it was his (Petitioner's) fault they got caught because Petitioner had caused the accident with the truck. *Id.*   Medina told Petitioner that he would pay Petitioner's attorney and ensure that nothing would happen to him if he (Petitioner) took the blame for the drugs. *Id.* at 345.   Medina told him

that his children were sick and he was on probation for another trial.   Petitioner testified:

> You know, now I think back, it was real stupid of me to do this. I can't – now, you know, I'm glad, between me and myself and my mother.   I was real dumb.   But at that moment, know what I'm saying, he looked to me like he wasn't going to be – I mean, I didn't think for the amount of drugs that were found it means 30 years.
>
> I was willing to work with him, you know.   I think it's my fault that he got caught. (Inaudible) you know what I'm saying.

*Id.* at 347.   Petitioner stated that the police questioned him about how much he had paid for the drugs, and Petitioner just guessed about the amount of drugs and their respective values. *Id.* at 350.   On cross-examination, Petitioner admitted that he provided details about the drugs to the police. *Id.* at 356-58, 365.

Petitioner now appears to assert that he lied at his trial and that he, in fact, never told the police that the drugs belonged to him (Doc. 1 at 1 at 9).   Even if this were the case, Petitioner is not entitled to relief under *Strickland*.   As noted, three separate police officers testified during the state's case that Petitioner admitted that the drugs found in the U-Haul belonged to him.   Counsel was entitled to believe the overwhelming evidence that Petitioner made such admissions to the police and to advise Petitioner that he would lose credibility with the jury if he suddenly reversed course and denied the statements at trial.   Although Petitioner faults counsel for not putting Medina on the stand to testify that he (Medina) was the actual owner of the drugs, defense counsel attempted to call Medina and was limited by the trial court to asking questions that would not force Medina to invoke his Fifth Amendment right against self-incrimination. *See* discussion *supra* Claim Two. At that point, counsel made the strategic decision not to call Medina as a witness because "the jury would have no reason to know why" Medina wasn't being asked "anything further than name, where he lived, or how he knew" Petitioner (T. at 333-34).   Instead, defense

counsel decided to have Petitioner testify regarding the reasons that he told police that he, not Medina, was the owner of the drugs found in the U-Haul. *Id.*   This decision was within the realm of reasonable trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (counsel's decisions regarding the evidence to present are presumed to be matters of trial strategy).[8]   To the extent that counsel's decision to forego presenting Medina's limited testimony was a strategic decision, it is virtually unassailable. *See Strickland*, 466 U.S. at 690 ("Strategic choices made after a thorough investigation are virtually unassailable.").

Claim Five fails on both prongs of *Strickland*, and is denied pursuant to 28 U.S.C. § 2254(d).

### F.   Claim Six

Petitioner asserts that counsel was ineffective for eliciting testimony from him indicating that he was in jail at the time of his trial (Doc. 1 at 10).   Specifically, Petitioner appears to object to a portion of his direct examination in which counsel attempted to show that Medina was the person responsible for the drugs in the U-Haul and was also the reason Petitioner was driving towards Fort Myers:

> COUNSEL:          Who rented that U-Haul, who got that truck?
>
> PETITIONER:      [Medina] did.

---

[8] Petitioner's newest assertion, made for the first time in his reply, that "[t]rial [c]ounsel had the moral obligation to call co-defendant Mr. [M]edina to the stand [e]ven if this will bring forward a citation for contempt from the trial court" is without merit (Doc. 17 at 16). Petitioner has offered no support for his contention that defense counsel is constitutionally required to disobey orders from the trial court and risk contempt, a mistrial, or disbarment in order to pursue a defendant's preferred line of defense.

| Q. | He did?   Why were you taking it to Fort Myers, did somebody live there? |
| A. | Yes, he did, he lived in Fort Myers. |
| Q. | Had you ever been to Fort Myers before? |
| A. | Couple times, on the job, you know, before. |
| Q. | On what job, what kind of job? |
| A. | I'm a driver.   I work for moving companies. |
| Q. | So you're a truck driver by trade? |
| A. | Yes. |
| Q. | At the time this happened, you said he lived in Fort Myers, where did you live? |
| A. | Miami. |
| Q. | Where do you live now? |
| A. | In jail. |
| Q. | Waiting for this trial? |
| A. | Yes. |

(T. at 337-38).   Petitioner asserts that he was prejudiced by this exchange because his incarceration would allow the jury to assume that Petitioner was guilty since he was in jail (Doc. 1 at 11).

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim on both prongs of *Strickland* (Ex. 12 at 7).   The post-conviction court concluded that counsel was merely inquiring of Petitioner which city he resided in, and even if counsel erred by the inquiry, Petitioner could not show resulting prejudice. *Id.* The court noted that the "jury heard testimony from both the troopers and the Defendant

that he had been arrested and placed into custody after drugs were seized from the moving truck that he was driving." *Id.* Petitioner appealed, and the post-conviction court's adjudication was *per curiam* affirmed (Ex. 16); *Martin*, 29 So.3d at 1127.

Respondents assert that the state court did not err under *Strickland* in this regard because the mention of jail was "brief and in the context which conveyed that [Petitioner] was incarcerated pending trial." (Doc. 13 at 36).   Respondents also point out that "[a]t the close of the direct testimony, counsel made clear that Petitioner had no criminal past connected with drugs and only one prior felony conviction for fighting twelve years earlier." (Doc. 13 at 36).   The Court agrees with Respondents' assertions.

Petitioner does not explain how the state court's conclusion was contrary to federal law or based upon an unreasonable determination of the facts, especially considering that the jury was aware that Petitioner had been arrested for the crimes for which he was being tried.   Moreover, Petitioner volunteered the information to which he now objects. Petitioner testified that he was arrested by police soon after he was stopped, and it could not have been a surprise to the jury that Petitioner was in jail pending trial.   Indeed, other federal courts have concluded that a jury's knowledge that a defendant was in prison awaiting trial due to the prisoner's appearance in prison clothing does not automatically result in prejudice. *See Jefferson v. LaClair*, Case No. 09-CV-2782, 2014 WL 887116, at *4 (E.D.N.Y. Mar. 6, 2014) ("Petitioner cannot establish a reasonable probability of acquittal were it not for his initial appearance in the prison jumpsuit."); *United States v. Hurtado*, 47 F.3d 577 (2d Cir. 1995) (finding one day of trial in prison garb was non-prejudicial in light of the evidence of defendant's guilt); *Carter v. United States*, 288 F. App'x 648, 650 (11th Cir. 2008) (defendant did not experience ineffective assistance via

counsel's allegedly allowing defendant to go to trial dressed in prison garb; evidence against him was so strong that there was no reasonable probability that jury would have found him not guilty but for fact that he appeared at trial in prison garb); *Cooper v. Virga, Case No. CV 12-4905-MWF (JPR), 2014 WL 4656416, at *29 (C.D. Cal. Jan. 24, 2014)* ("The purported error related to [Petitioner] testifying in his prison clothes could not have contributed to any cumulative error; his testimony focused on the charges he was facing and the benefits he was receiving by helping the police . . . and thus the jury could not have been surprised to see him in prison garb."); *Anderson v. Sec'y, Dept. of Corr., 462 F.3d 1319, 1329 (11th Cir. 2006)* ("Jurists of reason would not debate whether Petitioner's right to a fair trial was violated by the "single, brief glimpse" of Petitioner on video in prison garb. Not only was the image too brief, but it was also cumulative: the jury already knew Petitioner was incarcerated at the time of the news report because his cell mate testified to that effect.")

Given the evidence presented against Petitioner and counsel's clarification from Petitioner that he was only in jail awaiting trial and had no prior drug related convictions, Petitioner has not demonstrated a reasonable probability that the jury would have found him not guilty but for the fact that Petitioner admitted he was being held in jail pending his trial.  As was concluded by the state court, Petitioner has not satisfied *Strickland*'s prejudice prong, and Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

### G.    Claim Seven

Petitioner asserts that he was "deprived of his 6th and 14th Amendment Rights under the United States Constitution, based upon trial counsel's failure to object to the fundamental error that occurred during the jury charge conference, when the trial court

erred and the state committed prosecutorial misconduct." ([Doc. 1 at 12](#)).   Petitioner

raised this issue as ground nine of his Rule 3.850 motion.   However, the "issue" as

offered in his Rule 3.850 motion referred only to a *potential* unidentified error and did not

actually state a claim.   Ground nine of his motion read in its entirety:

> Trial counsel was ineffective for failing to object to subject
> matters that was fundamental error and misconduct by the
> state.   Due to said jury charge conference not being
> transcribed, Defendant is hampered from bringing forth any
> claims properly, that being, in a legally and sufficiently manner
> as required.   Therefore, Defendant reserves the right to bring
> forth any claims during this portion of the trial once he is able
> to have said portion transcribed and is aforded a copy.

(Ex. 11 at 47).   The post-conviction court struck the ground with leave to amend to set

forth a facially sufficient claim within thirty days (Ex. 12 at 8).   However, Petitioner did not

file an amendment, and the post-conviction court subsequently denied the claim on the

ground that it was facially insufficient. *Id.*   The denial was *per curiam* affirmed on appeal

(Ex. 16); *Martin*, 29 So.3d at 1127.

Respondents urge a procedural default defense, arguing that Petitioner did not

properly present this claim to the state courts for adjudication because the post-conviction

court dismissed the claim as insufficiently pleaded (Doc. 36 at 36-37).   This Court agrees

that any claim arising from an unidentified error in the charging conference is

unexhausted and procedurally barred; however, not because the claim was dismissed

facially insufficient.[9]   Rather, the claim is unexhausted because, notwithstanding the

---

[9]  The Eleventh Circuit has recently concluded that a Florida state court's dismissal
of a post-conviction claim for facial insufficiency constitutes -- at least for purposes of the
procedural default analysis for a federal habeas claim -- a ruling on the merits that is not
barred from federal review. *Pope v. Sec'y, Dept. of Corr.*, 680 F.3d 1271, 1285-86 (11th
Cir. 2012); *see also Borden v. Allen*, 646 F.3d 785, 808-16 (11th Cir. 2011) (rejecting
district court's conclusion that petitioner's ineffective assistance of counsel claims were

post-conviction court's conclusion that this claim was "facially insufficient," it appears that ground nine of Petitioner's habeas petition simply did not state a claim at all.   Rather, Petitioner sought to "reserve the right" to raise a claim in the future, which he did not do.

In his current petition, Petitioner makes cursory references to trial counsel and appellate counsel errors relating to the transcription of the jury charge, but still does not identify any error that actually occurred (Doc. 1 at 12).   To the extent that the current petition may be interpreted as asserting an error due to counsel's failure to provide him with a copy of a transcript, such a claim was not raised in the state courts and is unexhausted.   The time limit for seeking post-conviction relief in state court has expired. *See* Fla. R. Crim. P. 3.850.   Because there are no procedural avenues available for Petitioner to return to state court and exhaust a claim relating to the charging conference, any claim related to "fundamental error" in the charging conference is procedurally defaulted from federal review. Petitioner has shown neither cause excusing the default nor actual prejudice resulting from the bar.   Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.   Thus, Claim Seven is dismissed as unexhausted and procedurally barred.

### H.   Claim Eight

Petitioner asserts that trial counsel was ineffective for failing to file a motion to demand a speedy trial (Doc. 1 at 13).   Specifically, Petitioner asserts that he appeared before the state court for first appearance on December 9, 2004, and "the state had until

---

procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate).

June 7, 2005 to begin trial proceedings against petitioner." *Id.*   Petitioner asserts that he

did not waive his right to a speedy trial and did not give any person authority to do so. *Id.*

at 14.[10]   Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction

court denied the claim as conclusively refuted by the record:

> Defendant alleges that his counsel was ineffective for failing
> to file a motion for demand of speedy trial or a motion to
> dismiss the charges due to a violation of the Defendant's right
> to speedy trial.   The Defendant contends that he "at no time
> waived his speedy trial rights nor did he give any person
> authority to do so and by the face of the record shows no such
> wavering of rights."   However, the Defendant is mistaken as
> the record conclusively refutes this claim.   The record
> demonstrates that defense counsel made several requests for
> continuance, which waived the Defendant's speedy trial right.
> The Court held in *Stewart v. State*, 491 So. 2d 271 (Fla. 1986),
> that "when a defendant requests a continuance prior to the
> expiration of the applicable speedy trial time period for the
> crime with which he is charged, the defendant waives his
> speedy trial right as to all charges which emanate from the
> same criminal episode."   The Defendant's first appearance
> was held on December 9, 2004.   The Court minutes indicate
> that on March 30, 2005 and April 20, 2005, the case was
> continued at the request of the defense.   Since this occurred
> prior to the expiration of the 180 day speedy trial period, the
> Defendant's right to speedy trial was waived.   The Defense
> requested three additional continuances on July 13, 2005,
> January 23, 3006, and April 17, 2006, which also waived
> Defendant's right to speedy trial.   Accordingly, because the
> record conclusively refutes the Defendant's claim, it is denied.

(Ex. 12 at 9) (citations to the record omitted).   The post-conviction court was *per curiam*

affirmed (Ex. 16); *Martin*, 29 So.3d at 1127.   A review of the record supports the state

courts' adjudication of this claim.

---

[10] This claim of ineffectiveness appears to be directed towards the office of the
public defender which represented Petitioner from his first appearance until June 17, 2005
(Ex. 11).

Under Rule 3.191(a) of the Florida Rules of Criminal Procedure, a person charged with a felony must be brought to trial within 175 days of being taken into custody. Fla. R. Crim. P. 3.191(a).   After the speedy trial period expires, a defendant may file a notice of "Expiration of Speedy Trial Time." Fla. R. Crim. P. 3.191(p)(2).   Within five days of filing the notice, the state court must holding a hearing to determine whether any exceptions exist, which would prevent speedy trial, such as the defendant's unavailability. Fla. R. Crim. P. 3.191(p)(3); *State v. Nelson*, 26 So.3d 570, 574 (Fla. 2010).   If no exceptions exist, the trial court must order that the defendant be brought to trial within the ten-day "recapture period." Fla. R. Crim. P. 3.191(p)(3); *Nelson*, 26 So.3d at 575.   If the state fails to bring the defendant to trial within this period, through no fault of the defendant, he is "forever discharged from the crime." *Id.*

In the instant case, the state court determined that on March 30, 2005 and April 20, 2005, the case was continued at the request of the defense (Ex. 12 at 9).   This is a factual determination and is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).   Petitioner has presented no evidence to rebut the state court's determination that his case was continued twice, at the defense's request, within the speedy trial period.   Moreover, the state court concluded that three additional continuances were requested by the defense after the expiration of Petitioner's speedy trial period.[11]   "When the State is entitled to the recapture period, a continuance that is chargeable to the defense and made after the expiration of the speedy trial period but before a defendant files a notice of expiration waives a defendant's speedy trial rights

---

[11] Petitioner does not identify the nature of the continuances or assert that they were filed without a legitimate reason.

under the default period of the rule." *Nelson*, 26 So.3d at 580.   The right to a speedy trial is waived when a defendant *or his attorney* requests a continuance.   *Dillard v. Sec'y, Dept. of Corr.*, 440 F. App'x 817, 820 (11th Cir. 2011) (citing *State v. Riechmann*, 777 So. 2d 342, 365 (Fla. 2000)) (emphasis added).   A waiver of speed trial by counsel "is binding on the defendant 'even though done without consulting him and even against the client's wishes.'" *Dillard*, 440 F. App'x at 820 (quoting *State v. Kruger*, 615 So. 2d 757, 759 (Fla. 4th DCA 1993)); *see also McKenzie v. State*, 29 So.3d 272, 282 (Fla. 2010) (same). Petitioner waived his speedy trial right, and had counsel filed a notice of expiration under Rule 3.191(p)(2), such notice would have been denied due to the requested continuances.   Counsel is not ineffective for failing to file a meritless motion.   *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Moreover, the fact that five continuances were requested by the defense prior to trial indicates that Petitioner was not ready to proceed to trial.   Trial counsel cannot be held deficient for failing to push the state to bring a defendant to trial when the defense is not prepared.   *See e.g. Lowery v. Cummings*, Case No. 3:05CV303/LAC/MD, 2006 WL 2361929 *14 (N.D. Fla. Jul. 17, 2006) (counsel was not ineffective for not filing a notice of expiration when it would have been denied); *Davis v. McNeil*, Case No. 4:06–cv–534– MMP–EMT, 2009 WL 3756326 (N.D. Fla. Nov. 6, 2009) (rejecting ineffective assistance claim where trial counsel did not file a notice of expiration of speedy trial and filed a post-expiration motion for continuance); *Baker v. Sec'y, Dept. of Corr.*, Case No. 5:11-cv-359-RS-GRJ, 2014 WL 961213, at *10 (N.D. Fla. Mar. 12, 2014) ("Trial counsel cannot be

deemed deficient for failing to push the State to bring Petitioner to trial where new defense counsel had recently been substituted and was still obtaining discovery.").

Claim Eight fails to satisfy either prong of *Strickland* and is denied pursuant to 28 U.S.C. § 2254(d).

### I.      Claim Nine

Petitioner asserts that his trial counsel, Chris Brown, was hired by Medina to represent Petitioner and was therefore operating under a conflict of interest because Medina told Brown that the drugs found in the U-Haul belonged to him (Medina) (Doc. 1 at 15-16).   Petitioner raised this claim in a successive Rule 3.850 motion, filed after the post-conviction court denied his initial Rule 3.850 (Ex. 23).   The post-conviction court dismissed the successive Rule 3.850 motion as untimely filed, noting that it had been "filed well beyond the two year time limit of Fla. R. Crim. P. 3.850, and does not fall within any of the rule's exceptions.   Therefore, the Defendant's motion is untimely." (Ex. 24). The Second District Court of Appeal affirmed the dismissal (Ex. 26).   While the affirmance was a *per curiam* opinion without reasoning, this Court presumes that the Second DCA's decision affirms the reasoning, as well as the judgment, of the lower court. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a *per curiam* affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

Respondents urge that this claim is unexhausted and procedurally barred (Doc. 13 at 38).   This Court agrees.   The state court clearly and expressly stated that it was relying on state procedural rules to resolve Petitioner's claim (Ex. 24).   Additionally, the state court's decision on the procedural issue rested entirely on state law grounds and

was not intertwined with an interpretation of federal law.   Moreover, the state procedural rule regarding the timeliness of Petitioner's motion was adequate in that it was firmly established and regularly followed.   Rule 3.850(b) of the Florida Rules of Criminal Procedure provides that a motion to vacate a sentence that exceeds the limits provided by law may be filed at any time; however, no other motion shall be filed or considered pursuant to Rule 3.850 "if filed more than 2 years after the judgment and sentence become final[.]" Fla. R. Crim. P. 3.850(b).   Florida courts consistently follow the rule that the two-year time period provided in Rule 3.850(b) begins to run when appellate proceedings have concluded and the court issues a mandate. *See Knowles v. State*, 41 So.3d 332, 333 (Fla. 1st DCA 2010); *Lawson v. State*, 35 So.3d 112 (Fla. 2d DCA 2010); *Ghent v. State*, 27 So.3d 121, 123 (Fla. 4th DCA 2010); *Mullins v. State*, 974 So.2d 1135, 1137 (Fla. 3d DCA 2008).   Since his motion was filed beyond the two-year deadline, Rule 3.850(b) provided an adequate procedural basis for dismissal of his motion.   Since the state court rejected Petitioner's claims on the independent and adequate state ground of procedural bar, this court considers the claims procedurally defaulted. *See Coleman*, 501 U.S. at 734–35 and n. 1.

Petitioner has not shown cause for his failure to timely raise Claim Nine in the state courts; nor has he shown that he is entitled to review of this claim under any other recognized exception to the procedural bar.[12]   Therefore, Petitioner is not entitled to federal review of Claim Nine, and the claim is dismissed.

---

[12] Petitioner does assert in his reply that he is entitled to leniency due to the fact that he is a proceeding *pro se* (Ex. 17 at 21).   This argument is unavailing; ignorance of the law fails to establish cause for a procedural default. *See Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir. 1990) (a petitioner's *pro se* status does not excuse a procedural default); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (equitable relief from procedural

### J.    Claims Ten, Eleven, and Twelve

In Claim Ten Petitioner asserts that "the trial court did not establish a prima facie case to prove the elements" of trafficking under Florida Statute § 893.135 (Doc. 1 at 17).[13]
In Claim Eleven, Petitioner asserts that he was the victim of selective prosecution because Medina was not prosecuted for drug trafficking (Doc. 1 at 18).   In Claim Twelve, Petitioner asserts that "a manifest injustice occurred" when he was prosecuted for trafficking whereas Medina was not, resulting in Petitioner receiving a prison sentence (Doc. 1 at 19).   Petitioner attempted to raise these issues in a state petition for writ of habeas corpus, and the state court denied the claims as improperly filed.   The court noted:

> Petitioner has not alleged that he is being unlawfully detained within the jurisdiction of this Court, and, it is apparent from the address provided by Petitioner that he is not being detained within the jurisdiction of this Court.   Rather, Petitioner is using his petition as an attempt to collaterally attack his prior conviction.   Petitioner is challenging his conviction in Collier County Circuit Court Case Number 04-3703CF by asserting

---

bar not justified by fact that petitioner did not understand the law).

[13]   Petitioner also asserts in Claim Ten that Florida Statute § 893.135 is unconstitutional on its face because it allows an individual to be convicted of trafficking absent proof that the defendant knew of the illicit nature of the controlled substance he is alleged to have trafficked. *Id.*   This assertion was not raised in the state courts at all, and is thus, unexhausted and need not be considered by this Court.   In addition, the argument is squarely foreclosed by *State v. Adkins*, 96 So.3d 412 (Fla. 2012) ("Because there is no legally recognized use for controlled substances outside the circumstances identified by the statute, prohibiting the sale, manufacture, delivery, or possession of those substances without requiring proof of knowledge of the illicit nature of the substances does not criminalize innocuous conduct or impinge on the exercise of some constitutionally protected freedom.") (internal quotations omitted); *see also Shelton v. Sec'y, Dept. of Corr.*, 691 F.3d 1348 (11th Cir. 2012) (Florida court did not unreasonably apply clearly established federal law, as determined by the United States Supreme Court, by upholding Florida statute that partially eliminated the *mens rea* requirement for state drug offenses), *overturning Shelton v. Sec'y, Dept. of Corr.*, 802 F.Supp.2d 1289 (M.D. Fla. 2011).

that the trial court committed fundamental error when Petitioner was convicted for a crime when the essential elements were not on the face of the record and because he received a harsher sentence than his co-defendant. Petitioner requests that a writ of habeas corpus be granted, and admits that he requested relief pursuant to a rule 3.850 motion filed in his felony case, which was subsequently denied.   That denial was affirmed, *per curiam*, by the Second District Court of Appeal.

Petitioner cannot use a petition for writ of habeas corpus to obtain the kind of collateral post-conviction relief which may have been available by filing a motion in the sentencing court pursuant to the Florida Rules of Criminal Procedure. *Baker v. State*, 29 Fla. L. Weekly S105 (Fla. Mar. 11, 2004) (the common law remedy of habeas corpus is not available in Florida to obtain the kind of collateral post-conviction relief available by motion in the sentencing court pursuant to rule 3.850); *State v. Broom*, 523 So. 2d 639 (Fla. 2d DCA 1988) (habeas may not be used to collaterally attack the conviction, even in the same county where petitioner was tried). Likewise, a petition for writ of habeas corpus cannot be used to raise issues which could have been raised at trial and on direct appeal. *Hargrave v. Wainwright*, 388 So. 2d 1021 (Fla. 1980); *Scott v. State*, 820 So. 2d 321 (Fla. 5th DCA 2001) (habeas corpus is not a vehicle for additional appeals that were raised or should have been raised on direct appeal).

Petitioner's claims are not cognizable in a petition for writ of habeas corpus.

(Ex. 29).   The Second District Court of appeal affirmed the denial *per curiam* with citations to numerous state court decisions; each standing for the proposition that a defendant is required to raise collateral claims in the proper procedural vehicle (Ex. 33); *Martin*, 69 So.3d at 285.

Respondents assert that Claims Ten, Eleven, and Twelve are procedurally barred for lack of exhaustion (Doc. 13 at 39-45).   This Court agrees.   A petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Petitioner's petition, liberally construed, presents claims of trial court error and prosecutorial misconduct.   The procedurally correct way for Petitioner to have raised a claim of trial court error or prosecutorial misconduct in the Florida State courts is by direct appeal. *See Henry v. State*, 933 So. 2d 28, 29 (Fla. 2d DCA 2006) ("Henry's claims of prosecutorial misconduct and trial court error should have been raised on direct appeal."); *Brown v. State*, 894 So.2d 137, 145 (Fla. 2004) (claims of prosecutorial misconduct should be raised on direct appeal); *Sampson v. State*, 845 So.2d 271, 272 (Fla. 2d DCA 2003) (claims of trial court error should be raised on direct appeal).

The state appellate court's summary denial of Petitioner's state habeas petition cannot be said to rest on the merits of Petitioner's claims, as opposed to a procedural default.   In Florida, a District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).   Moreover, each of the cases cited in the affirmance of the lower court's denial stands for the proposition that claims must be raised in the correct procedural vehicle. *See Martin*, 69 So.3d at 285 (citing without comment: *Hughes v. State*, 22 So.3d 132 (Fla. 2d DCA 2009) (allegations of fundamental error cannot be used as mechanism for seeking review of untimely motion for post-conviction relief); *Henry v. State*, 933 So.2d 28 (Fla. 2d DCA 2006) (claims of prosecutorial misconduct and trial court error are required to be raised on direct appeal); *Steward v. State*, 931 So.2d 133 (Fla. 2d DCA 2006) (motion to correct illegal sentence is not a proper way to raise claims of insufficiency of the evidence, improper sentencing procedure, and ineffective assistance of counsel); *Bizzell v. State*,

912 So.2d 386 (Fla. 2d DCA 2005) (motions to correct a sentencing error are allowed after a notice of appeal is filed but before filing the initial brief); *Shortridge v. State*, 884 So.2d 321 (Fla. 2d DCA 2004) (claims relating to convictions and not sentences are not cognizable under Rule 3.800(a)); *Brown v. State*, 827 So.2d 1054 (Fla. 2d DCA 2002) (claims of prosecutorial misconduct should be raised on direct appeal); *Fernandez v. State*, 910 So.2d 352 (Fla. 3d DCA 2005) (claims that a sentence was disproportionate is not cognizable on a motion to correct illegal sentence); *Harris v. State*, 789 So.2d 1114 (Fla. 1st DCA 2001); and *Atwater v. State*, 781 So.2d 1149 (Fla. 5th DCA 2001) (defendant failed to preserve issue of disproportionate sentences)).

Because Petitioner failed to properly raise these claims in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts, the claims are likewise procedurally barred from review in this federal court.   Petitioner has failed to demonstrate objective cause for his failure to properly raise these claims in the state courts or actual prejudice resulting from the error complained of.   Therefore, he cannot overcome the bar, and Claims Ten, Eleven, and Twelve are dismissed as unexhausted and procedurally barred.


Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[14]

---

[14]  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Miguel Martin (Doc. 1) is **DENIED**.

2.      This case is **DISMISSED** with prejudice;

3.      Petitioner is **DENIED** a certificate of appealability; and

4.      The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of October, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Miguel Martin
Counsel of Record